IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01119-MEH

KARRAH JOHNSON,

    Plaintiff,

v.

SEARS, ROEBUCK AND CO., a New York corporation conducting business in Colorado,

    Defendant.

---

### ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Hostile Work Environment Claim Pursuant to Fed. R. Civ. P. 12(b)(1) [filed August 19, 2014; docket #28]. The motion is fully briefed, and the Court finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court **DENIES** Defendant's motion.

### BACKGROUND

I.    Facts

The following are factual allegations made by the Plaintiff in her Third Amended Complaint and offered by Defendant for jurisdictional analysis. These allegations are taken as true under Fed. R. Civ. P. 12(b)(1) pursuant to *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

Plaintiff Karrah Johnson is 25 years old and an African-American female. (Docket #24 at 2.) Plaintiff was employed by Defendant from December 8, 2007 until she was suspended on or about July 10, 2008 and ultimately terminated effective September 9, 2008. (*Id.* at 2-3.) Although Plaintiff was hired for a full-time position at the Sears outlet in Aurora, Colorado, she worked only part time as a Central Aisle Cashier. (*Id.* at 3.) She alleges she was never given a job description and worked odd hours, often with split shifts. (*Id.* at 4.) Tonja Mills, Plaintiff's supervisor, told Plaintiff she did not have a job description because her position would soon be changing to full time. (*Id.*)

In or about April 2008, Plaintiff alleges that Ms. Mills ordered Plaintiff to wash and paint the walls. (*Id.* at 3.) Plaintiff protested that painting walls was not a part of her job duties, but she complied with the assignment. (*Id.*) Plaintiff was the only African-American employee ordered to paint and wash walls and, indeed, she was the only African-American employee on her shift over eighteen years of age. (*Id.*) Plaintiff additionally alleges she worked at times as an MCA[1] but was not paid the higher rate of an MCA. (*Id.*).

Plaintiff was assigned "low-level tasks such as placing price stickers on goods." (*Id.*) When she complained of these "low-level tasks," Ms. Mills told her she had to perform the tasks in order to advance to full time and a management position. (*Id.*). Additionally, Plaintiff alleges that Ms. Mills was friendly to Caucasian and Hispanic employees, but "cold and terse with African-Americans." (*Id.* at 5.)

---

[1] Plaintiff does not indicate what MCA means but the Court presumes it is a Merchandise and Customer Assistant.

Between her split shifts, Plaintiff alleges she often spent time in the mall while waiting to go back to work. (*Id.* at 4.) During these periods, she was regularly questioned by mall security about why she was in the mall. (*Id.*) Plaintiff complained to Ms. Mills and to Ms. Mills' supervisor, Jeff Long, about the trouble she was having with security due to the split shifts. (*Id.*)

Plaintiff's grandmother, Brenda Johnson, also contacted Ms. Mills protesting of the odd hours and the painting duties. (*Id.*) Ms. Mills allegedly told Ms. Johnson that Plaintiff "could clean and paint because it was in her blood." (*Id.*) Ms. Johnson described Ms. Mills as "harsh, rude, unprofessional, and chauvinistic." (*Id.*)

On July 9, 2008 Plaintiff worked from 3:42 p.m. until 8:19 p.m. (*Id.* at 5.) Around 4:30 p.m. that day, a male acquaintance of Plaintiff's came to the store and borrowed Plaintiff's car. (*Id.*) At approximately 2:00 a.m. on July 10, 2008 the Aurora police arrived at Plaintiff's home to inform her that her car had been involved in a hit and run accident between 5:00 p.m. and 7:00 p.m. the previous evening. (*Id.*) One of the officers asked Plaintiff for her work schedule on July 9, 2010. (*Id.*)

The following day, July 10, 2008, Plaintiff and her grandmother went to Sears to ask Ms. Mills for Plaintiff's time card. (*Id.* at 5-6.) Plaintiff alleges that Ms. Mills demanded to know why Plaintiff needed the time card. (*Id.* at 6.) When Plaintiff refused to tell her, other than she "needed proof of her work for the authorities," Ms. Mills told Plaintiff it was not Sears' policy to give out time card information, and she would have to talk to the corporate office. (*Id.*) Plaintiff and her grandmother then went to the Sears Employment Office where they retrieved copies of the time card without any questions. (*Id.*)

According to Plaintiff, Ms. Mills falsely told Catherine Brown in Human Resources that Plaintiff had been arrested and accused of robbery on July 9, 2008. (*Id.*) On July 11, 2008, when Plaintiff called Ms. Mills to determine her work hours, Ms. Mills notified her that she was suspended indefinitely without pay because of her involvement in a criminal act. (*Id.*)

Plaintiff asserts that Sears officials refused to communicate with Plaintiff or Ms. Johnson during the suspension and did not permit her to participate in their investigation. (*Id.* at 7.) On July 16, 2008, Jeff Long, Ms. Mills' supervisor, called Ms. Johnson to tell her he was aware of Plaintiff's situation and she had been suspended until further notice. (*Id.*) Plaintiff does not believe there was any communication between Defendant and the Aurora Police Department. (*Id.* at 7-8.)

Plaintiff unsuccessfully attempted to obtain the police record from the July 9, 2008 incident on five separate occasions. (*Id.* at 8.) On August 14, 2008, Plaintiff finally received a copy of the incident report that verified she was not implicated in the crime. (*Id.* at 9.)

On July 21, 2008, Plaintiff and Ms. Johnson filed a complaint with Sears Employee Relations protesting the suspension. (*Id.*) Plaintiff and Ms. Johnson called Employee Relations and an employee hotline repeatedly, but their calls were not returned until August 26, 2008 when Plaintiff was told that the investigation was a personal matter and was closed. (*Id.* at 9.) Plaintiff was terminated from employment with Sears effective September 9, 2008. (*Id.* at 2.)

Plaintiff alleges that Defendant engaged in racial profiling by accusing Plaintiff of committing a crime and having been arrested. (*Id.*) Additionally, Plaintiff's former Sears co-workers told her that Ms. Mills ordered the Plaintiff to perform the cleaning and painting tasks because she was the only African-American of age on the shift. (*Id.*) Further, Plaintiff asserts

that Defendant did not effectuate Plaintiff's suspension and termination according to policy and refused to acknowledge the police report absolving her. (*Id.* at 9-10.)

II.     Procedural History

On November 18, 2008, Plaintiff, proceeding *pro se*, filed a charge of discrimination with the Equal Employment Opportunity Commission of the United States ("EEOC"), claiming she suffered race discrimination between April 1, 2008 and July 10, 2008. (Docket #29 at 3.) Plaintiff checked the box for "race discrimination" on the form. (*Id.*) The EEOC determined that there was probable cause for racial discrimination and, on January 22, 2014, issued Plaintiff a right to sue letter. (Docket #29 at 2.)

On April 18, 2014, Plaintiff, through counsel, initiated this action by filing a Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e-5g) et seq. and the Colorado Anti-Discrimination Act, C.R.S. 24-34-301 et seq. (Docket #1.) Plaintiff's Third Amended Complaint, filed on August 5, 2014, is the operative pleading in this matter.

Plaintiff's Title VII claims are for disparate treatment and hostile work environment. (*Id.* at 11.) On August 19, 2014, Defendant filed its Partial Motion to Dismiss arguing that the hostile work environment claim should be dismissed for failure to exhaust administrative remedies. (*Id.* at 1.) The matter is now fully briefed, and the Court is sufficiently advised.

**LEGAL STANDARD**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal

courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Kennedy v. Lubar*, 273 F.3d 1293, 1302 (10th Cir. 2001) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion goes beyond the allegations contained in the Third Amended Complaint to factually attack this Court's subject matter jurisdiction.

## ANALYSIS

Plaintiff's second claim alleges that she was subjected to a hostile work environment "in the assignment of duties, scheduling, hours, denial of MCA pay, special scrutiny, suspension, termination and less favorable terms and conditions of employment based on race." (Docket #24 at 11.) Defendant argues that the hostile work environment claim should be dismissed for failure to exhaust Plaintiff's administrative remedies through her charge of discrimination with the EEOC. (Docket #28 at 2.) Plaintiff responds that the EEOC charge form does not include an option for a hostile work environment claim, but that the claim should be included as a legal theory under race discrimination. (Docket #29 at 2.) Defendant counters that to administratively exhaust the hostile work environment claim Plaintiff must either check the "other" or "continuing action" boxes in her EEOC charge or include language in the charge to assert the claim, and Plaintiff did neither. (Docket #30.)

"A plaintiff must exhaust [her] administrative remedies before bringing suit under Title VII." *Mitchell v. City & Cnty. of Denver*, 112 F. App'x. 662, 666 (10th Cir. 2004) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997)). The purpose behind the requirement of exhausting a claim with the EEOC is two-fold: "protect[ing] employers by giving them notice of the discrimination claims being brought against them, [and] providing the EEOC with an opportunity to conciliate the claim." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004).

Here, Plaintiff marked the box only for "discrimination based on race" on the EEOC charge form. She did not mark either the boxes titled "other" or "continuing action." (Docket #28-1.) The failure to mark the appropriate box on an EEOC form creates the presumption that

the plaintiff "is not asserting claims represented by that box." *Jones v. United Parcel Services, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). However, the Tenth Circuit follows a rule of liberally construing charges of discrimination filed before the EEOC, *see id*., and the presumption may be rebutted if the conduct in the complaint reasonably would be expected to fall within the scope of the charge. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). This Court must, therefore, consider whether Plaintiff's narrative statement alleges conduct that reasonably would be expected to raise a hostile work environment claim. "To lay a factual foundation for a hostile work environment claim, [Plaintiff] must allege facts indicating a workplace permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Mitchell*, 112 F. App'x. at 668 (quoting *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted)).

In this case, although Plaintiff did not mark the appropriate box, the "particulars" listed in her EEOC charge form state that she was required to paint, clean, and apply price stickers by her supervisor – duties her supervisor did not require other "non-Black cashiers" to do. (Docket #29-1.) Plaintiff's supplemental narrative alleges additional conduct, including (1) Plaintiff's grandmother complained on Plaintiff's behalf about the trivial tasks Plaintiff was assigned and Ms. Mills responded that Plaintiff could do those tasks because "it was in [her] blood;" (2) Plaintiff was paid less than other employees performing the same work; (3) Plaintiff was assigned odd working hours that often included split shifts, despite complaining of these hours to supervisors; and (4) Ms. Mills fabricated rumors that Plaintiff was arrested for robbery. (Docket #29-4.) The Court finds that a hostile work environment charge could be "reasonably expected

to follow" from Plaintiff's allegations concerning the assignment of undesirable tasks, Ms. Mills' proffered reason for assigning the undesirable tasks, the lower wages, the odd working hours, and Ms. Mills' widespread rumors. *See Foster*, 365 F.3d at 1195; *see also Gunnell,* 152 F.3d at 1260 (allegations that identified "the type of discrimination complained of, the alleged harasser, and an approximate time period" were "minimally sufficient to satisfy the requirement for the contents of a charge of discrimination and the purposes of the notice requirement."). Plaintiff's Third Amended Complaint contains nearly identical allegations to those contained in her EEOC narrative, and, therefore, are reasonably related to the EEOC charge. *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge.").

In sum, Plaintiff's EEOC charge overcomes the presumption that her claims were limited to the checked box, as its narrative is reasonably read to include a hostile work environment claim. *See Gunnell,* 152 F.3d at 1260. Accordingly, the Court finds Plaintiff administratively exhausted her hostile work environment claim.

## CONCLUSION

Plaintiff has demonstrated her EEOC charge of discrimination overcomes the presumption that she did not claim a hostile work environment at the administrative stage. Accordingly, the Court **DENIES** Defendant's Partial Motion to Dismiss [filed August 19, 2014; docket #28].

ORDERED this 16th day of October, 2014, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge